## Fritts v. Fregly (No. 2)

*Joseph A. Campagna,* for plaintiffs.
*Walter F. Froh,* for defendants.

RANCK, *J.*, July 22, 1980—Once again we have before us preliminary objections filed by the three newspaper defendants to plaintiffs' complaint. This action thus far has had a long and tortuous procedural history and for us to review it would serve little purpose. Suffice it to say that plaintiffs' basic complaint has remained factually constant. Plaintiffs allege that they were determined to be financially eligible to receive cash and medical assistance by the Northumberland County Board of Assistance (hereinafter the board). As a result of

plaintiffs' eligibility, defendants Henry Fregly, Thomas Hodrick, Pauline Yeager, and Does I-X, all employes of the board, had access to the board's records concerning plaintiffs. The amended complaint presently before us states that these defendants, either jointly or separately, disclosed or caused to be disclosed to the News Publishing and Printing Company, the Daily Item Publishing Company, and the Standard Printing Company, Inc., substantial personal information regarding each plaintiff's application for and receipt of public assistance. It is further alleged that each of defendant newspapers subsequently published a single story which contained personal information concerning plaintiffs gleaned from the board's records. Plaintiffs are seeking compensatory and punitive damages for the invasion of their right to privacy.[1]

Defendants Fregly, Hodrick, and Yeager have filed an answer and new matter to the latest amended complaint. However, the three newspaper defendants have each once again responded by way of preliminary objection. Since all have raised the same objections, namely, (1) a motion to strike for failure to comply with Pa.R.C.P. 1020(a) and, (2) a demurrer, we will treat them as one.

The major issue before us is whether plaintiffs' amended complaint states a cause of action against the newspapers for invasion of privacy. "The right of privacy is firmly established in Pennsylvania despite the fact that its perimeter is not yet clearly

---

1. In our opinion and order of October 1, 1979, 14 D. & C. 3d 176 (1979), we ruled that plaintiffs' amended complaint failed to state a cause of action against any of defendants for an invasion of their right to privacy under the Ninth Amendment to the United States Constitution or for an intentional infliction of emotional distress.

defined and its contours remain amorphous. Vogel v. W. T. Grant Company, 458 Pa. 124, 327 A. 2d 133 (1974)." Neff v. Time, Inc., 406 F. Supp. 858, 860 (W.D. Pa. 1976). Since 1974 the courts of Pennsylvania have recognized and followed the rules promulgated by the Restatement, 2d, Torts, §652B through E (hereinafter the Restatement). See Vogel, supra, 458 Pa. at 129-30, 327 A. 2d at 136. Under the Restatement four distinct but coordinate invasions of privacy are recognized. See Restatement §652A. These can be paraphrased as follows, 406 F. Supp. at 860:

"1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs. 2. Public disclosure of embarrassing private facts about the plaintiff. 3. Publicity which places the plaintiff in a false light in the public eye. 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness."[2] The action against the newspapers arises out of three newspaper articles, one published by each defendant. In order to properly rule on defendants' demurrers we must examine them in some detail.

Though the articles are not identical, we believe that they are substantially similar and thus can be treated as one for present purposes. Each article states that plaintiffs filed claims with the board for travel expenses incurred in connection with their obtaining medical treatment. The nature of these trips is then set forth. A number of the trips were made to a local shopping mall. It is stated that plaintiffs contended that these trips were necessary

2. Plaintiffs have not argued, nor do we feel that the facts recited in their amended complaint would warrant, a claim under 1 or 4.

so that Mr. Fritts could exercise indoors during the cold weather in accordance with his doctor's orders. It is further stated that plaintiffs requested travel expenses for trips in excess of 200 and 300 miles, for services which the board felt could have been provided locally. Among the trips mentioned are a number made by Mrs. Richmond to a chiropractor in York. Another was to a drug store in a different locality from that in which Mrs. Richmond resides. She is quoted as having said that she doesn't like the druggist in her hometown. These claims were rejected by the board and plaintiffs requested and were granted a further hearing.

"A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint, and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences." 2 Goodrich-Amram 2d §1017(b):11. In ruling on a demurrer "[t]he question to be decided is not whether the statement of his claim is so clear in both form and specification as to entitle plaintiff to proceed to trial without amending it, but whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiff." 2 Goodrich-Amram 2d, supra. In addition, "Where a doubt exists as to whether or not summary judgment [on a demurrer] should be entered, this should be resolved in favor of refusing to enter it." 2 Goodrich-Amram 2d, supra. We believe the requisite certainty that the law will not permit a recovery against these defendants exists.

Section 652D of the Restatement states that: "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offen-

sive to a reasonable person, and (b) is not of legitimate concern to the public."

As noted above one of the prerequisites for the tort of public disclosure of private facts is that the matter publicized be "of a kind that . . . would be highly offensive to a reasonable person." In the newspaper articles in question, all that was revealed concerning plaintiffs was that they applied for travel expenses from the board, the nature of the trips taken, the fact that their requests were denied, and that they had requested a hearing. It is highly questionable whether the facts disclosed were private ones.[3] However, the matters publicized herein would not be highly offensive to a reasonable man. There was no accusation of fraud on the part of plaintiffs. The articles merely stated that plaintiffs had applied for benefits and that their application was rejected. There is no implication that welfare fraud was committed.[4] Plaintiffs may wish the information had not been disclosed, but that does not change its character. As noted by a leading scholar in this area: "The law is not for the protection of the hypersensitive, and all of us must, to some reasonable extent, lead lives exposed to the public gaze." Prosser, Law of Torts, § 117. The facts publicized, though perhaps embarrassing to plaintiffs, nevertheless are not highly offensive.

---

3. The News-Item published its article concerning the plaintiffs on January 9, 1978. However, the Daily Item and the Milton Standard did not publish the information until the next day, January 10, 1978. It would appear to us that at least as far as the Daily Item and Milton Standard there was no disclosure of "private" facts as required by section 652D since the News-Item had made them public a day earlier.

4. The Act of June 13, 1967, P.L. 31, as amended, 62 P.S. § 481, defines "welfare fraud" as securing or attempting to

A greater hurdle facing plaintiffs is the condition imposed under section 652D that the matter publicized not be of legitimate concern to the public. Plaintiffs contend that they are not citing 62 P.S. §404, which restricts the release of information contained in the board's records, and the decision of the Supreme Court of Pennsylvania in McMullan v. Wohlgemuth, 453 Pa. 147, 308 A. 2d 888 (1973). McMullan involved an attempt by the Philadelphia Inquirer to gain permission to examine and inspect Department of Public Welfare lists containing the names, addresses and amounts received by Philadelphia public assistance recipients. The Commonwealth Court granted such access but the Supreme Court reversed. However, the issues presented in McMullan were very different from those presented herein. The court refused to grant the Inquirer access not because it would be an invasion of the welfare recipients' privacy, or because the lists were not of legitimate public concern, but because: (1) the Inquirer had failed to meet any of the statutory requirements for such access, McMullan, supra, 453 Pa. at 155-158, 308 A. 2d at 892-894, and (2) access was not mandated by either Pennsylvania's "Right to Know" Act or the Pennsylvania or United States Constitutions. Nevertheless, it is significant that the court twice felt compelled to point out that they were not concerned "with the right of a newspaper to publish information which it has already acquired." McMullan, supra, 453 Pa. at 166, 308 A. 2d at 898. They further noted that

---

secure assistance "by means of a wilfully false statement of misrepresentation, or by impersonation, or other fradulent means . . .." There is no allegation of false statements or misrepresentation on the part of any of the plaintiffs contained in the articles.

"[i]f it were, the result we reach would be quite different." McMullan, supra, 453 Pa. at 161, 308 A. 2d at 895.

The standard to be applied in determining what constitutes a matter of public interest is a broad one. In Time, Inc. v. Hill, 385 U.S. 374, 388, 87 S.Ct. 534, 17 L.Ed. 2d 456 (1967), the Supreme Court set it as including "'all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.'" This would encompass both "entertaining" as well as "informing" facts. Time, Inc., supra.

With the heightened public interest today in government's use of tax revenues, the matters published herein would certainly be within the sphere of legitimate public concern. As Justice Pomeroy pointed out six years ago in his dissenting opinion, in McMullan, supra, 453 Pa. at 180, 308 A. 2d at 905: "Public welfare today comprises 16% of the annual general fund budget of the Commonwealth. Even more so than in the 1930s when the government first undertook direct relief, it is definitely big business, involving half a billion dollars of Pennsylvania taxpayers' money and eight hundred thousand recipients." The public interest test outlined in Time, Inc. would have to be narrowed drastically to place welfare policy outside its sphere.

Plaintiffs have argued that defendants have "not inconveniently . . . also ignored issues to be resolved once the Court dismisses their objections and arrives at the merits of the case." Issues cited include how the newspapers obtained the information, what they did to verify its accuracy, and what effect its disclosure had on plaintiffs. We fail to see the relevance of these issues to the demurrer before

us. Plaintiffs' complaint does not allege defendant newspapers acted tortiously in obtaining the information, nor does it claim it was false. As far as the effect its disclosure had on plaintiffs, we would submit that that is a question of damages.

Finally, even if we were to assume that the information disclosed would be highly offensive to a reasonable person and not of legitimate concern to the public, it is still unclear whether recovery would be consistent with the protections afforded the press by the First Amendment. In a defamation action, where the protected interest is reputation, truth is a constitutionally required defense. See Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 489, 95 S.Ct. 1029, 43 L.Ed. 2d 328 (1975). "Similarly, where the interest at issue is privacy rather than reputation and the right claimed is to be free from the publication of false or misleading information about one's affairs, the target of the publication must prove knowing or reckless falsehood where the materials published, although assertedly private, are 'matters of public interest.' Time, Inc. v. Hill, supra, at 387-388 [17 L.Ed. 2d 456]." Cox, supra, at 490. Nevertheless, the question of whether liability may be imposed for the publication of truthful information has not yet been resolved.[5] Since no authority for such a right of action

_____

5. The issue was placed before the Supreme Court in Cox Broadcasting Co. v. Cohn, supra. In that case, a radio broadcast mentioned the name of a rape victim despite the fact that a state criminal statute prohibited disclosure of a rape victim's name. The court held that there was no invasion of privacy since the reporter's source for the victim's name was a copy of the indictment, an official record kept in connectin with a judicial proceeding and available for public inspection: Cox, supra, at 493-496.

has been presented to us, this court will not create one.

Defendant's counsel has also argued that no cause of action has been stated for a "false light" invasion of privacy under section 652E of the Restatement, 2d.

We agree. Section 652E reads as follows:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

Nowhere in plaintiffs' amended complaint are there any allegations that the matter published was not true, see Restatement, 2d, Torts, §652E, comment a, or that defendants "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Plaintiffs allege merely that "[t]he information was published by Defendant newspaper companies with reckless disregard for the confidential nature of the information." We submit that this is quite different.

Finally, defendants have again objected to plaintiffs' complaint because it fails to set forth each cause of action in a separate count as required by Pa.R.C.P. 1020(a). We sustained a similar objection to plaintiffs' initial complaint. See opinion and order of October 18, 1978. It is not necessary to reiterate the authority contained therein. Plaintiffs have argued that the defect has been corrected.

Paragraph 52 of their amended complaint states that "the factual allegations apply to all three newspaper Defendants, as if each were the subject of a separate count or cause of action." We do not believe this remedies the defect. Each newspaper printed a different article. The articles were not all published on a single day. To require each newspaper to respond to this complaint would be unfairly burdensome and contravene both the spirit and the letter of Pa.R.C.P. 1020(a).

We, therefore, enter the following

## ORDER

And now, July 22, 1980, after due consideration of the written and oral arguments of counsel, it is ordered and directed that the preliminary objections in the nature of a motion to strike and a demurrer filed by defendants News Publishing and Printing Company, Daily Item Publishing Company, and Standard Printing Company, Inc., be, and the same are hereby, sustained.