## Martin v. Myers

*James L. Martin*, pro se.
*Samuel L. Andes*, for defendant.

SHUGHART, *P.J.*, January 15, 1981—Plaintiff filed a pro se complaint in trespass on June 2, 1980, seeking damages in excess of $10,000 resulting from defendant's alleged negligence, invasion of privacy, and defamation. Defendant deposed plaintiff on July 11, 1980, and thereafter filed a motion for summary judgment on August 5, 1980. Plaintiff propounded interrogatories and filed requests for admissions on August 18, 1980. Oral argument was heard on defendant's motion for summary judgment on August 27, 1980. At the time of oral argument, defendant had not filed answers to

plaintiff's requests for admissions or to plaintiff's interrogatories. Therefore, a decision on defendant's motion for summary judgment was deferred because the record was incomplete. On September 30, 1980, defendant filed answers to plaintiff's interrogatories and requests for admissions. Reargument on defendant's motion for summary judgment was held on November 12, 1980. The record is complete and defendant's motion for summary judgment is ripe for decision.

In ruling on a motion for summary judgment the pleadings, depositions, interrogatories, admissions and affidavits on file are considered: Pa.R.C.P. 1035. All relevant materials are to be viewed in a light most favorable to the non-moving party: Toth v. Philadelphia, 213 Pa. Super. 282, 247 A. 2d 629 (1968). Summary judgment may only be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law: Pa.R.C.P. 1035(b). The facts in the case at bar are confusing and are further complicated by plaintiff's inartfully drawn pleadings. As we proceed through the maze before us, we consider the relevant facts to be as follows.

Plaintiff was employed as an accountant by the Pennsylvania Farm Management and Business Analysis Service (hereinafter FMBAS) until December 31, 1979, when he terminated his employment as the result of an alleged breach of contract on the part of FMBAS.[1] Upon terminating his

1. FMBAS is an association designed for the purpose of providing Pennsylvania farmers with accounting and other business related services. To this end, FMBAS employs staff accountants who are assigned clients in a given geographic area. In the case at bar, the alleged contract dispute between FMBAS and plaintiff arose over the assignment of clients. According to plaintiff, he was assigned clients out of his geographic area and that this constituted a breach of his employment.

employment, plaintiff relinquished to FMBAS all of the supplies provided by his employer with the exception of certain client records. Defendant, an attorney who represented FMBAS, in an effort to obtain the records, made a telephone call to plaintiff on December 31, 1979, at approximately 4:30 pm, while plaintiff was at his parents' home in Palmyra, Lebanon County. The telephone conversation lasted approximately one hour, during which time defendant attempted to encourage plaintiff to relinquish the records. Plaintiff refused, asserting that ethical concerns, concern for his former clients, and a desire to communicate directly with FMBAS dictated that he retain the records. It appears that a further condition for the release of the records was that FMBAS would admit that it breached plaintiff's employment contract and thus, a covenant by plaintiff not to compete would be ineffective.

On January 2, 1980, defendant made a second unsuccessful telephone call to plaintiff to obtain the release of the records. Following the second unsuccessful attempt to regain the records, a letter was mailed by FMBAS to each of the clients serviced by plaintiff. The letter stated that plaintiff was no longer employed by FMBAS and requested that each client sign an attached authorization for plaintiff to release their records to FMBAS. The authorizations were to be forwarded to plaintiff directly. The letter indicated that plaintiff felt that the clients' authorization was necessary for him to release their records. In addition to the letters sent by FMBAS to plaintiff's former clients, a letter was sent by defendant on January 3, 1980, directly to plaintiff, requesting that the records be returned to FMBAS. It is on the basis of this sequence of events that plaintiff seeks to hold defendant liable for damages. There appear to be no genuine issues of

fact and the question therefore posed is whether defendant is entitled to judgment as a matter of law.

In plaintiff's first negligence claim it is asserted that the telephone call of December 31, 1979, caused plaintiff, and continues to cause him, an adverse domestic relationship with his parents. Specifically, plaintiff contends that his parents' religious beliefs frown on litigation and that the telephone call, being from a lawyer, indicated to plaintiff's parents that he was involved in litigation and the call thereby caused the relationship between plaintiff and his parents to become estranged.[2] Plaintiff's theory, grounded in negligence, requires that he plead and prove a duty of care on the part of defendant owing to plaintiff, a breach of that duty, and that the breach of duty caused injury to plaintiff. "Obviously, no negligence claim can be based upon a state of facts on which the law does not impose a duty upon defendant in favor of the plaintiff." Boyce v. U.S. Steel Corp., 446 Pa. 226, 230, 285 A. 2d 459, 461 (1971). The test of negligence is whether defendant could reasonably foresee the likelihood of harm resulting from his acts: Dahlstrom v. Shrum, 368 Pa. 423, 84 A. 2d 289 (1951).

On the basis of the facts before us it is impossible to find a duty on the part of defendant to refrain from calling plaintiff at his parents' home. Admittedly, upon receiving the call, plaintiff informed defendant that he did not wish to continue the conversation at his parents home. In response to this statement, defendant offered to immediately terminate the conversation. Despite defendant's offer,

---

2. Plaintiff is now enrolled in law school. He has not indicated what effect this has on his familial relationship.

the conversation continued, apparently without further protestations from plaintiff. Moreover, if plaintiff was really concerned about any adverse affect the call may have had on his parents, it would have been a simple matter for him to break the telephone connection. It is impossible to conclude that it was reasonably foreseeable that the telephone call, or the continuation of the call once made, would cause plaintiff to suffer an adverse family relationship. Without such foreseeability, the law cannot impose a duty upon defendant to refrain from calling plaintiff at his parents' home and therefore no action for negligence will lie.

Even if the law could impose a duty upon defendant to refrain from calling plaintiff at his parents' home, there are no facts before us which indicate that plaintiff's parents heard anything which defendant said during the course of the alleged inflammatory conversation. In fact, if anything was heard by plaintiff's parents, the utterances had to come from plaintiff's own mouth. In this respect, if plaintiff was injured by the call, the wounds were self-inflicted.

Plaintiff further alleges that defendant was negligent in failing to apprise himself of the intentions of FMBAS, that he was negligent in requesting plaintiff to perform impossible or impractible acts, and that defendant was negligent in failing to apprise himself of certain ethical standards relating to the field of accounting. The single act complained of by plaintiff is defendant's request that plaintiff return the client records to FMBAS. Plaintiff apparently contends that this request was negligent because defendant did not gather certain information before endeavoring to negotiate the return of the records. Such a proposition is absurd. Defendant's conduct was perfectly reasonable in

light of the circumstances. Defendant's direct request to plaintiff for the return of the records was the most expeditious way to resolve the matter. A speedy resolution was particularly important considering the fact that there were innocent third parties involved, those parties being the clients whose records were being held by plaintiff. Under these circumstances the law cannot impose a duty on defendant to refrain from requesting the return of the records until defendant apprised himself of tangential matters. Without a duty, plaintiff's negligence claim must fail.

Even if a duty could be imposed upon defendant and a breach thereof could be found, plaintiff's claim must fail because plaintiff suffered no injury as the result of defendant's allegedly uninformed requests for the return of the records. It is well settled that there can be no actionable negligence without an injury: Jeloszewski v. Sloan, 375 Pa. 360, 100 A. 2d 480 (1953).

Plaintiff next alleges that defendant was instrumental in invading his privacy. Specifically, plaintiff asserts that defendant advised FMBAS to mail the letters to his former clients informing them that plaintiff was no longer employed by FMBAS and requesting that they forward an authorization to release their records to plaintiff. It is plaintiff's contention that as the result of these letters he received annoyingly constant telephone calls and written communications from his former clients.

"[I]nvasion of privacy is actually comprised of four analytically distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life, and (4) publicity placing a person in false light." Marks v. Bell Telephone Co. of Pennsylvania, 460 Pa. 73, 86, 331 A. 2d 424, 430 (1975). See also Vogel v. W. T. Grant

Co., 458 Pa. 124, 327 A. 2d 133 (1974); Restatement (Second) of Torts §652A. In the case at bar, appropriation of name or likeness clearly does not apply. The tort of false light is also inapplicable. Since the remaining torts could arguably apply to the facts as alleged in plaintiff's complaint we will discuss each of them.

Restatement (Second) of Torts §652B provides that, "one who intentionally intrudes, physically or otherise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." The language of sec. 652B contemplates that the invasion into one's seclusion will be compensable if it is committed directly by the tortfeasor. In the case at bar, plaintiff alleges that defendant caused letters to be written to plaintiff's former clients by FMBAS and that the former clients thereafter made phone calls and sent letters to plaintiff. The letter sent to the former clients contains no instruction to the clients to call plaintiff on the telephone. Accordingly, defendant cannot be held liable for the phone calls made by the clients. In regard to the written communications complained of, FMBAS instructed the former clients to forward written releases to plaintiff. Although the written communications to plaintiff were made at the direction of defendant, plaintiff still cannot complain of the result.

The rule stated in §652B applies to intrusions into places where one has a reasonable expectation of privacy: Kedra v. City of Philadelphia, 454 F. Supp. 652 (E. D. Pa. 1978). Plaintiff here could not have a reasonable expectation of privacy insofar as written communications from his former clients are concerned. Plaintiff provided services to these in-

dividuals for a period in excess of one year. His clients would naturally want to know why he was no longer providing them services. Further, throughout his conversation with defendant, plaintiff consistently implied that he would not, or could not, release the client records before the clients were informed that he was no longer employed by FMBAS. Even if plaintiff never specifically asked that the clients send him written authorizations to release their records, such a request was certainly implied by his insistence that professional ethics required him to keep the records. It must therefore be concluded that plaintiff had no reasonable expectation of freedom from intrusion by way of written communications from his former clients.

Finally, §652B clearly provides that an intrusion must offend a reasonable person. We are not here dealing with thousands of cards and letters pouring into plaintiff's home. The communications came from a limited number of clients with whom plaintiff had a working relationship. It is unreasonable to conclude that such a limited number of communications would be offensive to a reasonable person.

Considering all of the facts in a light most favorable to plaintiff, plaintiff has failed to establish a cause of action for unreasonable intrusion upon his seclusion. The written communications, as well as the communications by way of the telephone, were not made directly by defendant, plaintiff had no reasonable expectation to be free of communications from his former clients, and finally, a reasonable person would not be offended by a limited number of communications from persons with whom he had an established working relationship.

Restatement (Second) of Torts §652D provides

that "one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate public concern. With this tort it is essential that there be unreasonable *publicity of a private fact*: Vogel v. W. T. Grant Company, supra. "If there is no publicity, or if it is only what would normally be considered reasonable, or if the fact publicized is not a private one, there has been no actionable invasion of privacy." Id. at 131, 327 A. 2d 137.

Whether the fact that plaintiff was no longer employed by FMBAS is a private fact is debatable. Assuming, however, that plaintiff's employment status is a private fact, there still can be no actionable invasion of privacy on the basis of the letters sent by FMBAS to plaintiff's former clients because these letters cannot be considered publication. Publicity is communication to the general public or to a group of persons so large that the fact is substantially certain to be made of public knowledge: Vogel v. W. T. Grant, supra. See also Restatement (Second) of Torts § 652D, comment a. In the case at bar, plaintiff's employment status was not placed in the classified advertisements in the local newspaper. It was merely communicated to those persons who had a need to be aware of it. As to these individuals plantiff's employment status was very relevant. If anything, the letters to the clients merely hastened their knowledge of a fact they were eventually going to be made aware of when plaintiff ceased providing them with accounting services. There was no publication and consequently there can be no cause of action for invasion of privacy.

In his next cause of action plaintiff alleges that he

was defamed by the letters sent by FMBAS to his former clients. Specifically it is averred that the letters misrepresented the conduct of FMBAS relative to plaintiff and falsely stated that plaintiff requested written authorization to release the client records. It is further averred that the alleged defamation deterred plaintiff's prospective business relationships with his former clients.

It is the function of the court to determine if a communication is capable of a defamatory construction: Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A. 2d 899 (1971); Vitteck v. Washington Broadcasting Co., Inc., 256 Pa. Super. 427, 389 A. 2d 1197 (1978). Our initial task is to determine if the letter complained of is capable of a defamatory construction. A thorough review of the letter reveals an innocuous document advising plaintiff's former clients that plaintiff was no longer employed by FMBAS and requesting that the clients sign an attached authorization for the release of their records. This language cannot be considered to be defamatory regardless of the construction placed upon it. "A libel is a maliciously written or printed publication which tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule or injure him in his business or profession." Id. at 432, 389 A. 2d at 1200. A letter stating that one is no longer employed by a particular employer does not blacken a person's reputation. Had the letter stated that plaintiff was fired for poor performance or had the letter been drafted in a derogatory manner this would have been an entirely different case. The mere statement, however, that plaintiff was no longer employed by FMBAS cannot be considered defamatory.

Plaintiff further asserts that the statement that

plaintiff felt an authorization to release the records was necessary is both false and defamatory. We do not agree. This statement is not defamatory even if it is false. Far from blackening plaintiff's reputation it can more accurately be construed an enhancing plaintiff's reputation. Such a statement conveys the message that plaintiff is of a high ethical standard and concerned about the confidentiality of his former client's affairs. No torture of this language can class it defamatory.

Finally, it appears from plaintiff's brief that he believes he pleaded a cause of action for interference with prospective business advantage in paragraph 21 of his complaint. He attempts to trace this cause of action to the letters sent by FMBAS to plaintiff's former clients. Despite plaintiff's contention in his brief that interference with prospective advantage was pleaded as a cause of action, in fact, plaintiff pleaded this as an element of damages in conjunction with his defamaton claim. Since we have held that the letters sent by FMBAS were not defamatory, no discussion as to injury is necessary. We have painstakingly attempted to review and unravel plaintiff's pleadings; however, where a cause of action is not stated in the complaint it cannot be found in the brief.

After thorough review of the pleadings, the interrogatories, the deposition and the requests for admisions in a light most favorable to plaintiff and applying the law to the facts we are forced to conclude that the facts will not support any of plaintiff's alleged causes of action and summary judgment in favor of defendant must be entered.

## ORDER OF COURT

And now, January 15, 1981, for the reasons ap-

pearing in the opinion filed this date, judgment is entered in favor of defendant and against plaintiff and the complaint against defendant is dismissed.