Ira Dean SPENCER, Plaintiff,

v.

**GENERAL TELEPHONE COMPANY OF PENNSYLVANIA, Defendant.**

Civ. A. No. 80–0315.

United States District Court, M.D. Pennsylvania.

Nov. 17, 1982.

Gilbert A. Cornfield, Melissa J. Auerbach, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Bruce J. Brafman, Edward J. Morehouse, Jr., Stamford, Conn., for defendant.

## MEMORANDUM

RAMBO, District Judge.

The plaintiff, Ira Dean Spencer, is an employee of GTE Automatic Electric, Incorporated [hereinafter GTE Automatic]. The defendant, General Telephone Company of Pennsylvania [hereinafter General Telephone], contracts from time to time with GTE Automatic for the performance of certain telephone equipment installations. When an employee of GTE Automatic re-

ports for work at a facility of General Telephone, he or she is required to fill out a "Contract Employee Information Sheet."

In October 1979 Spencer was assigned by GTE Automatic to provide services at the offices of the defendant in York, Pennsylvania. The plaintiff was requested to fill out the "Contract Employee Information Sheet." The plaintiff refused, alleging that the use of the sheet invaded his rights to privacy and his constitutional rights. The plaintiff was allowed to work even though he did not complete the form. After a few days, Spencer was informed by a representative of General Telephone that he would have to complete the form or he could not continue to work.

Before the plaintiff was to continue work at York, he was reassigned to a project in West Virginia. Upon completion of the West Virginia job, the plaintiff was reassigned to Florida. Spencer then informed GTE Automatic that he would return to York and sign the form rather than go to Florida.

On or about January 2, 1980, the plaintiff registered a protest with the Commissioner, Pennsylvania Public Utility Commission. The Commissioner responded that the Public Utility Commission "does not have jurisdiction over the management problem."

Spencer reported to work at York on January 7, 1980 and signed the Information Sheet, but with a written protest. Later that day he was informed that the form with a written protest was unacceptable. On January 8 a compromise was arrived at whereby Spencer would fill out the form without written notation, but he could register a verbal protest. This agreement was utilized, so that plaintiff did not lose any days at work or any pay resulting from the disagreement over the information sheet.

On March 26, 1980, the plaintiff filed a civil complaint alleging two causes of action. The defendant moved for dismissal under Rules 12(b) and 12(h)(3) of the Federal Rules of Civil Procedure or alternatively for a summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Count I of the complaint seeks a "declaration of rights" and an injunction prohibiting the defendant from the continued use of the information sheet on the basis that the defendant has violated the plaintiff's constitutional rights of due process, equal protection and privacy as well as the provisions of Title 42 U.S.C. § 1983. Plaintiff alleges that defendant's status as a public utility constitutes an "exercise of government power" so as to require the application of constitutional safeguards. For the plaintiff to prevail on this count, he must establish that the activity of General Telephone constitutes state action. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966); *Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883).

The United States Supreme Court decided on June 25, 1982 the case of *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The *Rendell-Baker* case involved a private school which received funds from state and local governments and was regulated by the state. *Id.* at ——, 102 S.Ct. at 2766. The issue was whether the discharge of certain employees constituted actions which can be attributed to the state. The Court laid out four factors to be considered in deciding whether the acts of an enterprise were acts of the state.

First, the Court concluded that the receipt of public funds was not sufficient to make the school's decisions acts of the state. *Id.* at ——, 102 S.Ct. at 2770. *See Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (decided the same day as *Rendell-Baker* ). The analogy drawn in regards to the receipt of public funds was to that of private corporations whose business depends on public contracts. —— U.S. at ——, 102 S.Ct. at 2770.[1] This factor is of little consequence in the instant case.

Next the Court considered the extensive regulation of the school by the state. *Id.* at

---

1. There is no contention that General Telephone receives public funds.

——, 102 S.Ct. at 2770. The language of Chief Justice Burger in analyzing the issue of state regulation is applicable to the present case.

Here the decisions to discharge the petitioners were not compelled or even influenced by any state regulation. Indeed, in contrast to the extensive regulation of the school generally, the various regulators showed relatively little interest in the school's personnel matters. The most intrusive personnel regulation promulgated by the various government agencies was the requirement that the Committee on Criminal Justice had the power to approve persons hired as vocational counselors. Such a regulation is not sufficient to make a decision to discharge, made by private management, state action.

*Id.* at —— – ——, 102 S.Ct. at 2772. The Court in *Blum v. Yaretsky* defined the test as "[T]he complaining party must ... show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" —— U.S. at ——, 102 S.Ct. at 2786 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). The plaintiff, Spencer, indicates that he registered a protest with the Pennsylvania Public Utility Commission and was informed that the Commission "does not have jurisdiction over the management problem." Such a response is hardly supportive of an argument that a close nexus exist between the regulatory authority and the utility on the issue of employment regulation. Plaintiff offers no facts to suggest a nexus exists.

The third factor is "whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" —— U.S. at ——, 102 S.Ct. at 2772 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974) (emphasis in original)). The providing of telephone services can hardly be considered within the "exclusive prerogative of the State."

The last factor is the symbiotic relationship analysis which arose out of *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The Court in *Rendell-Baker* said, "Here the school's fiscal relationship with the State is not different from that of many contractors performing services for the government. No symbiotic relationship such as existed in *Burton* exists here." —— U.S. at ——, 102 S.Ct. at 2772. The present case also does not significantly differ from other state contractors. No symbiotic relationship exists.

■ In light of the above analysis, Count I of the complaint which is based on the United States Constitution and Title 42 U.S.C. § 1983 will be determined under Rule 56 of the Federal Rules of Civil Procedure. The plaintiff has failed to show the requisite state action to support a claim under the equal protection or due process clause of the fourteenth amendment, the right to privacy guaranteed to him by the first, fourth and fifth amendments as made applicable to the states by the fourteenth amendment, or a claim under the provisions of Title 42 U.S.C. § 1983 and, therefore, summary judgment will be granted in favor of the defendant, General Telephone Company of Pennsylvania.

The plaintiff alleges in Count II that defendant has violated plaintiff's common law rights and acted in a tortious manner by breaching and interfering with his right of privacy and intruding upon his employment relationship with GTE. The relief sought by Count II is identical to that sought by Count I.

The plaintiff argues that because of General Telephone's use of the information sheet, which allegedly violates his right of privacy, he must either submit to the intrusion by signing the sheet or refuse to sign and run the risk of GTE Automatic selecting more remote assignments for him or terminating his employment. The plaintiff in his motion for summary judgment argues that the undisputed facts support two distinct torts. First, the use of the informa-

tion sheet is an invasion of his common law right to privacy. And second, that there is an intentional interference with his employment contract with GTE Automatic.

The Commonwealth of Pennsylvania has adopted § 652A(2) of the Restatement (Second) of Torts which defines the general categories of the tort of invasion of privacy. *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327 A.2d 133 (1974).

> Section 652A(2) of the Restatement of Torts (Second) addresses the tort as follows:
>
> (2) The right of privacy is invaded by
> (a) unreasonable intrusion upon the seclusion of another, as stated in Section 652B; or
> (b) appropriation of the other's name or likeness, as stated in Section 652C; or
> (c) unreasonable publicity given to the other's private life as stated in Section 652D; or
> (d) publicity that unreasonably places the other in a false light before the public, as stated in Section 652E.

Restatement (Second) of Torts § 652A(2).

Clearly subsections (c) and (d) cannot apply because the defendant has not and does not contemplate giving "publicity" to the information Spencer is to provide.[2] Subsection (b) is inapplicable on its face. That leaves subsection (a) as the only portion of the tort which might have been committed.

Section 652B defines that tort of intrusion upon seclusion as:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Comment b to § 652B expands on what kind of intrusion is required. It says in part: "[The intrusion] may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents."

■ Comment d elucidates the offensiveness which is required.

> d. There is no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

This court cannot envision how the facts as described by Spencer can comport to the requirements of the tort of invasion of privacy as defined in § 652B. First, the tort goes to actions which are done in contravention of a person's actual or circumstantial declaration of a zone of seclusion. *See Id.* § 652B, comment c and accompanying examples. Spencer may have declared a zone of seclusion, but General Telephone has not intruded. All General Telephone has done is request Spencer to allow certain investigations. Such a request cannot compare to the surreptitious investigations or activities envisioned by the Restatement. Nor does this court understand how a reasonable person could be *highly* offended by the request of General Telephone. If Spencer is subjectively offended, that is not enough under § 652. The actions of General Telephone as developed in the record are reasonable as a matter of law.

---

**2.** The Restatement (Second) distinguishes "publicity" from "publication." "Publicity ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, comment a.

■ The plaintiff also alleges that the conflict involving his signing or refusing to sign the information sheet was a tortious interference with his employment contract with GTE Automatic. The Pennsylvania courts have adopted the Restatement (Second) of Torts definition of intentional interference with existing contractual relations. *Adler, Barish, Daniels, Levin & Creskoff v. Epstein,* 482 Pa. 416, 429–432, 393 A.2d 1175 (1978). *See* Restatement (Second) of Torts § 766 (1977). The Restatement analyzes the tort into three elements: (1) intentional act, (2) improperly done, and (3) interferes with the performance of a contract.

■ The action of General Telephone in insisting that Spencer complete the information sheet fails to meet the first element of the tort. "Since interference with contractual relations is an intentional tort, it is required that in any action based upon § 766 the injured party must show that the interference with his contractual relations as either desired by the actor or known by him to be a substantially certain result of his conduct." *Id.* § 767, comment d. *See id.* § 8A.

General Telephone did not single out or in any way act toward Spencer with the particularity which would indicate a purposeful or desired interference with the plaintiff's employment contract. If General Telephone was not purposeful, then did it act knowing with substantial certainty that the interference would occur? The plaintiff does not argue that any actual interference has occurred. He relies on the actions GTE Automatic might take at some future time. If the plaintiff is uncertain as to whether the future consequences will occur, then it seems logically impossible to establish that General Telephone could be *substantially certain* that the interference would follow from its routine use of the information sheet.

The intent element must also be considered in light of the Pennsylvania Supreme Court's decision in *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174

(1974). The *Geary* case involved the termination of an "at will" employee and whether he had a cause of action against his employer. 456 Pa. at 173–74, 319 A.2d 174. In discussing the intent element, the court said:

> the novel theory of recovery which appellant advances must surely involve specific intent on the part of the company to harm Geary or achieve some other proscribed goal. If a general intent, in the sense that an employer knew or should have known the probable consequences of his act, were all that a disgruntled employee need show in order to make out a cause of action, the privilege of discharge would be effectively eradicated, for some degree of harm is normally foreseeable whenever an employee is dismissed.

456 Pa. at 178, 319 A.2d 174 (footnote omitted).

The analogy to the present case is that if Spencer could establish the requisite intent by simply alleging that the requirement of completing the information sheet by every contract worker [3] was substantially certain to interfere with the worker's main employment, then virtually any requirement placed on a contract worker would show the requisite intent. An employer who places conditions upon the employment of a contract worker could always foresee some potential interference. Thus Spencer's allegations do not raise the requisite intent required in *Geary.*

To sustain his case, Spencer must also show that the action of General Telephone was *improperly* done. The Restatement (Second) indicates the following factors to be evaluated in determining whether the interference was improper.

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

---

**3.** The regular employees of General Telephone fill out a similar form.

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interferences and

(g) the relations between the parties.

Restatement (Second) of Torts § 767.

The factors are to be weighed and considered in relation to each other and the facts of the particular case. There are three (3) key factors in the present case. First, the nature of General Telephone's conduct is not like the conduct suggested in comment c to § 767. The requirement that Spencer sign the information sheet does not compare to physical violence, misrepresentation, threats of criminal prosecution, threats of civil prosecution, or concerted refusals to deal. *See generally* Restatement (Second) of Torts § 767, comment c. Second, the defendant has articulated security reasons for the utilization of the information sheet. The use of such a form to attempt to screen out security risks would be a reasonable interest which the defendant might choose to advance, *id.* § 767(d), and he thereby also protects society's interest in a functioning telecommunications system. *Id.* § 767(e). Third and finally, the relationship between the plaintiff and the defendant is not the type which is usually found when the tortious conduct has been determined to be improper. The usual case involves a fact pattern in which the defendant gains either short or long term business advantage from his interference with the contract. *Id.* § 767(g). In the instant case, General Telephone has no economic or business advantage to gain by interfering with Spencer's contract with GTE Automatic.

This court does not think it is legally possible for Spencer to show that the actions of General Telephone are improper. Thus, the plaintiff has failed to establish facts which can support the second element of the tort of interference with contract.

This court, based on the above analysis, has determined on the facts as presented in the record that the plaintiff does not as a matter of law prove either a violation of the plaintiff's constitutional right to privacy or a violation under 42 U.S.C. § 1983, because the requisite state action is lacking. The plaintiff also fails to prove either a tortious invasion of privacy and tortious interference with contract. This court will grant a summary judgment under Rule 56 of the Federal Rules of Civil Procedure in favor of the defendant, General Telephone of Pennsylvania, on both counts.