Beverly WILCHER, Sharon Smith, Michael Danylo, Cornelius Skinner, Wilmington Firefighters Assoc. Local 1590, Plaintiffs,

v.

CITY OF WILMINGTON, James A. Sills, James T. Wilmore, Sr., Clifton E. Armstead, S.A. Wayne Crosse, William J. Yanonis, Defendants.

CITY OF WILMINGTON,
Third Party Plaintiff,

v.

SODAT–DELAWARE, INC.,
Third Party Defendant.

Civil Action No. 94–137–JJF.

United States District Court,
D. Delaware.

March 30, 1996.

Teresa C. Fariss, and Jan R. Jurden, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, for Plaintiffs.

Lynn S. Seth, Assistant City Solicitor, Wilmington, Delaware, for City of Wilmington Defendants/Third Party Plaintiffs.

Bruce C. Herron, of Sawyer & Akin, Wilmington, Delaware, for Third Party Defendant SODAT–Delaware, Inc.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Plaintiffs' Motion for Reargument and New Trial. (D.I. 146.) Defendant City of Wilmington

("City") and Third–Party Defendant SO-DAT–Delaware, Inc. ("Sodat"), have both responded that the Plaintiffs are not entitled to a new trial. (D.I. 146, 147.) Because no factual issues were in dispute at the trial, and because the Court believes it correctly decided the issues before it as questions of law, the Court concludes that Plaintiffs are not entitled to a new trial or reargument.

## I. BACKGROUND

This is a class action filed on behalf of all firefighters employed by the City of Wilmington who were subject to a random drug testing program between January and March of 1994. The named Plaintiffs are Beverly Wilcher, Sharon Smith, Michael Danylo, Cornelius Skinner and the Wilmington Firefighters Association Local 1590. The individual Plaintiffs are firefighters employed by the City of Wilmington and are all members of the Plaintiff Wilmington Firefighters Union Local 1590. The remaining Defendant is the City of Wilmington ("City"), and the Third Party Defendant is SODAT Delaware, Inc. ("SODAT"), a private, non-profit corporation which provides a wide variety of services related to drug addiction and treatment including random drug screening for numerous clients.

The Court held a three-day trial concerning the issue of whether the direct observation method of urine collection utilized in the random drug testing of the City of Wilmington by SODAT was an unconstitutional invasion of the firefighters' privacy under the Fourth Amendment of the United States Constitution.

At the conclusion of Plaintiffs' presentation of evidence, the Court granted the individual Defendants' motion for judgment as a matter of law on the grounds that individual Defendants[1] were entitled to qualified immunity because the Plaintiffs had not established that they knew, or should have known, that direct observation of urine collection violated constitutional principles. (Tr. at B–176.)

Prior to commencement of trial on the third day, the Plaintiffs directed the Court's attention to the case of *Bolden v. Southeastern Pennsylvania Trans. Auth.*, 953 F.2d 807, 822–23 n. 23 (3d Cir.1991), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992),[2] which held that Fourth Amendment questions of reasonableness were strictly questions of law for the court to decide. (Tr. C–1—C–12). After discussing the implications of *Bolden* with the attorneys for both sides, the Court granted the parties' application and dismissed the jury on the grounds that no questions of fact remained for the jury to decide and the issues of law in the case would be decided by the Court in accordance with the *Bolden* decision. (Tr. C–8, C–11.) The Court also stated its intention to decide the state law invasion of privacy claims. (Tr. C–8, C–12.) Neither party objected. (*See* Tr. C–8, C–12.)

The parties submitted post-trial briefs and the Court issued a Memorandum Opinion and Order holding that the direct observation method of urine sample collection used by SODAT did not violate the Fourth Amendment or state privacy laws. (D.I. 143, 144.)

In their present application, Plaintiffs assert that (1) the issue concerning whether the monitors observed the genitals of the firefighters was a question of fact that should have been decided by a jury (D.I. 145 at ¶¶ 7, 11); (2) the common law invasion of privacy standard is different than that of the constitutionality of the direct observation method, and should have been decided by a jury (D.I. 145 at ¶¶ 8–9); (3) the monitors' observation of the firefighters' genitals is a violation of the firefighters' constitutional privacy interests (D.I. 145 at ¶ 11); (4) the Court erred in granting the individual defendants qualified immunity and SODAT immunity as a non-state actor (D.I. 145 at ¶ 10); and (5) the Plaintiffs did not assert violation of the collective bargaining agreement and the Court

---

1. The individual Defendants included Mayor James A. Sills, Sr., City Fire Department James T. Wilmore, City Fire Department Deputy Chief of Operations Clifton E. Armstead, City Personnel Director S.A. Wayne Crosse, and City Deputy Director of Personnel William J. Yanonis.

2. Specifically, the parties advised the Court of their view that the issues in the case required the rendering of a decision pursuant to footnote 23 of the *Bolden* decision.

should withdraw the portion of its decision concluding that the agreement was not violated (D.I. 145 at ¶¶ 1–6).

## II. LEGAL STANDARDS

### A. Motion for Reargument

■ Although Local Rule 7.1.5 permits a party to file a motion for reargument, it does not set forth a standard by which such motions are to be judged.[3] However, courts in this District have consistently held that motions for reargument ought to be granted sparingly, and not granted "where it would merely 'allow wasteful repetition of arguments already briefed, considered and decided.'" *Helman v. Murry's Steaks, Inc.*, 743 F.Supp. 289, 290 (D.Del.1990) (citations omitted). Furthermore, reargument will be granted only where the matters for reargument would have altered the previous result reached by the Court and where the Court has patently misunderstood a party or an issue. *Brambles USA, Inc., v. Blocker*, 735 F.Supp. 1239, 1240–41 (D.Del.1990) (citations omitted).

### B. New Trial

■ The decision to grant a new trial is a matter within the sound discretion of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190–91, 66 L.Ed.2d 193 (1980); *American Bearing Co. v. Litton Indus., Inc.*, 729 F.2d 943, 948 (3d Cir.), *cert. denied*, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984). There are three grounds for a court to grant a new trial under Rule 59(a)(2) of the Federal Rules of Civil Procedure: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. *United States v. Schiffer*, 836 F.Supp. 1164, 1169 (E.D.Pa.1993); *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir.1978); *see* 6A James W. Moore et al., *Moore's Federal Practice*, ¶ 59.07 (2d ed. 1993).

3. Local Rule 7.1.5 provides in full:
 A motion for reargument shall be served and filed within 10 days after the filing of the Court's opinion or decision. The motion shall briefly and distinctly state the grounds therefor. Within 10 days after service of such mo-

## III. DISCUSSION

### A. Fourth Amendment Issue

#### 1. The Question of Reasonableness

■ The constitutional question of whether the direct observation method of urine collection is "reasonable" under the Fourth Amendment of the United States Constitution is a question of law to be decided by the court. *Bolden*, 953 F.2d at 822–23 n. 23. The sole role of the jury in such cases is to decide questions of fact, which do not include the question of reasonableness. *Id.*

There is no doubt that the distinctions between questions of law, mixed questions of law and fact, and questions of fact are blurred. While it is easy to say that the line of demarcation is clear, in that questions of fact should always be jury questions, and questions of law should always be for the court, two hundred years of jurisprudence do not bear out the workability of this premise. Questions of pure fact, or mixed fact and law, can become at their margins questions of law where there is no evidence that a jury could find fault. Justice Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U.Chi.L.Rev. 1175, 1180–81 (1989).

The apparent ambiguity concerning the issue of whether a Fourth Amendment reasonableness question is one of fact or one of law has been resolved by the Court of Appeals for the Third Circuit and the United States Supreme Court. In *Bolden v. Southeastern Pennsylvania Trans. Auth.*, Judge Alito, writing for the Third Circuit *en banc*, could not have been clearer, stating that the "[d]etermination of reasonableness under the Fourth Amendment is a question of law ... based on constitutional law, not a factual, reasonable-person determination." 953 F.2d 807, 823–24 n. 23 (3d Cir.1991), *citing United States v. Evans*, 937 F.2d 1534, 1536 (10th Cir.1991).

tion, the opposing party may serve and file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether reargument will be granted.

The holding in *Bolden* is grounded in the decisions of the United States Supreme Court, which provide that the question of reasonableness in a constitutional context is a question for the court, not the jury. *Id., citing Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *United States v. Salmon,* 944 F.2d 1106 (1991); *see also United States v. Mendenhall,* 446 U.S. 544, 551 & n. 5, 100 S.Ct. 1870, 1875–76 & n. 5, 64 L.Ed.2d 497 (1980) (Powell, J., concurring in part and concurring in judgment) (question of reasonableness under Fourth Amendment is question of law); Scalia, *supra,* at 1181–82 (same).

### 2. Constitutionality of Direct Observation of Urine Collection

■ In deciding the constitutional question as an issue of law, the Court is mindful that the issue of the constitutionality of direct observation method of urine collection does not arise in a vacuum. To decide it requires examination of accepted social norms. *Soldal v. Cook County, Ill.,* 506 U.S. 56, 62–64, 113 S.Ct. 538, 544, 121 L.Ed.2d 450 (1992); *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 603, 109 S.Ct. 1402, 1405–06, 103 L.Ed.2d 639 (1989); Scalia, *supra,* at 1185. But the inquiry is very narrow, concerning only the question of whether direct observation collection is constitutional. The Court is not concerned whether there is any less invasive way for the City to have performed urine testing. *See Illinois v. Lafayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983).

In this regard, the Court remains persuaded that the direct observation method of urine collection for drug testing purposes is an acceptable procedure by professional and medical standards. Government agencies, police departments, fire departments and educational institutions require the presence of a monitor in the bathroom while the sample is collected from the officer or employee. (Closson, Tr. at C–16–17.) Testing facilities use the direct observation method because they believe it to be the most accurate collection method for insuring the integrity of the urine sample and its chain of custody, since other collection methods do not always reveal

substitutions. (Closson, Tr. at C–19, C–22–23, C–27; D'Angelo, Tr. at B–236–237.)

Courts that have found "direct observation" constitutionally unreasonable have been presented with collection methods different than those employed by SODAT. For instance, the Plaintiffs have cited the Court to the case of *Kennedy v. The City of New York,* No. 94 Civ. 2886 (MBM), 1995 WL 326563 (S.D.N.Y., June 1, 1995), for the proposition that direct observation of urine collection is always a constitutional violation. (D.I. 145 at 10–11.) However, the Court is not persuaded that *Kennedy* stands for the application of such a broad rule of law. At issue in *Kennedy* was a "direct observation" method in which a group of policemen forced another to urinate in a bedpan after surgery in order to obtain a "random" drug test. *Kennedy,* 1995 WL 326563, at *4. Unlike the present case, the direct observation procedure used in *Kennedy* clearly deviated from acceptable norms and practices. *Id.* More pertinent to the issue of the constitutionality of direct observation urine collection is the recent decision of the United States Supreme Court in *Vernonia School Dist. v. Acton,* in which the Supreme Court held that a drug testing procedure which placed a monitor in a room with the student did not violate that student's Fourth Amendment rights. —— U.S. ——, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995).

■ Accordingly, with the understanding of direct observation collection recounted in the Court's June 30, 1995 Memorandum Opinion, the Court concludes that if did not err when it held that the instant direct observation method utilized by SODAT is not a violation of the Fourth Amendment when used to test public safety employees such as firefighters.

An examination of the SODAT testing program, both in terms of its design and intent, and more specifically in its execution, demonstrates that no element of the program was intended to invade the privacy of a firefighter in an overly intrusive manner. Mr. Crosse testified that SODAT made clear that the monitor was not directly observing the private parts of the firefighters, but was in the room in case the person made any strange

618

moves that could indicate they were altering or doing something to the sample. (Cross, Tr. at A–165, A–178.) The purpose of the SODAT observation was to insure the integrity of the urine specimen, not to look at the individual's genitalia. (McLaughlin, Tr. at B–69, B–97–99.) Further, SODAT considered direct observation collection the best method to insure the sample actually came from the firefighter, and SODAT would not have stood by its test results without it. (D'Angelo, Tr. at B–236–237.) As far as where the monitors were to stand, Ms. D'Angelo, medical director of SODAT, testified that direct observation entailed that she would go into the bathroom with the person and observe them, usually off to the side. (D'Angelo, Tr. at B–235).

Witnesses' testimony concerning the direct observation method employed by SODAT supports the Court's understanding that the intent of the direct observation was carried out in its execution. For example, Ms. Smith was observed by a woman in the same room, who did not specifically look at her genitalia but only tilted her head to see. (Smith, Tr. at B–116, –120, –127–28, –130.) Ms. Wilcher was observed in both of her collections by a woman who stood to the side of the room. (Wilcher Tr. at B–140–141, –145–146.) Mr. Skinner and Mr. Danylo were observed by a man who moved to insure that their urine was emanating from them. Although these cases may have involved some observation of the genitalia area generally, this observation was only a by-product of the general observation of the donor. (Skinner, Tr. at A–189, 190; Danylo, Tr. at A–217.) In the Court's view, these instances of collection did not deviate from generally accepted procedures of direct observation collection. Arguably, the procedure varied from donor to donor, but the Court is persuaded that the SODAT collection method as designed and executed was not constitutionally unreasonable.

The Court finds the SODAT collection method no more intrusive on the firefighters' privacy than was the high school's drug testing program found to be constitutional in the United State's Supreme Court's decision in *Vernonia School Dist. v. Acton.* In *Vernonia,* student athletes consented to random

drug tests, and underwent these tests throughout the season. —— U.S. ——, 115 S.Ct. 2386, 2389, 132 L.Ed.2d 564 (1995). Once notified of the random test, the student entered an empty locker room with an adult monitor of the same sex. *Id.* If the student was male, the monitor stood behind the student and often watched the student while he urinated. *Id.* Female students were permitted to enter an enclosed stall, and were heard but not observed. *Id.*

Because the conditions of collection were nearly identical to those encountered in the athletic locker room and restrooms, the Supreme Court found that the privacy interests of the students impacted by the collection procedures were negligible. *Id.* at ——, 115 S.Ct. at 2392–93. Balancing their lowered privacy interests against the school's interest in testing the students, the Court found that the school's goal to protect athletes from the risk of immediate harm resulting to the drug user or to other players did justify the intrusion into their lowered expectations of privacy. *Id.* at ——, 115 S.Ct. at 2396. Moreover, the Court found that the efficacy of the means used was self-evident, since its goal was to prevent athletes from using drugs and it specifically targeted athletes for drug testing. *Id.* at ——, 115 S.Ct. at 2395–96.

Like the situation in *Vernonia,* the firefighters here have a reduced privacy interest and the City has a compelling government interest which justifies an intrusion into the firefighters' lowered privacy interest. Because they are in a highly regulated industry, and because they had consented to random testing in their collective bargaining agreement, the firefighters had a reduced privacy interest. *See Skinner,* 489 U.S. at 626, 627, 109 S.Ct. at 1418, 1419. The City's interest is the safety and protection not only of the individual firefighters, but also the community at large, because a firefighter impaired by drugs can cause human loss. *Transport Workers' Union of Philadelphia, Local 234 v. SEPTA,* 884 F.2d 709, 712 (3d Cir.1989); *see also Skinner,* 489 U.S. at 633, 109 S.Ct. at 1421–22 (urine tests not unreasonable in light of potential major accidents and safety violations). Clearly, the government's interest here is more significant than in *Vernonia,*

which was targeted only to the safety of student athletes, not the community at large.

Moreover, the Court is persuaded that the procedures used by SODAT were narrowly tailored to serve the compelling governmental interest. The presence of the monitors in the bathrooms with the firefighters is similar to the presence of the monitors in *Vernonia*, and even though the monitors may have stood closer than those in *Vernonia*, this close proximity was a result of the collection facilities, in this case a bathroom as opposed to a locker room, and not a more intrusive method.

### 3. Conclusion

In sum, the question of whether direct observation of urine collection rises to a violation of the United States Constitution is a question of law to be decided by the Court. The Court concludes that the SODAT direct observation method is constitutional under the Fourth Amendment of the Constitution. The Court is persuaded that the intent, design, and execution of the SODAT direct observation method narrowly advances the goals of public safety, and that these goals outweigh the lowered expectation of privacy of the firefighters.

### B. State Law Invasion of Privacy Claim

■ The common law tort of invasion of privacy may take several forms under Delaware law, and it is "intrusion into physical solitude" that the Plaintiffs are alleging here. The Delaware Supreme Court has adopted the Restatement (Second) of Torts characterization of this tort. *Barker v. Huang*, 610 A.2d 1341, 1350 (Del.1992), *citing* Restatement (Second) of Torts § 652(B). Section 652(B) states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Id.*

■ Consent to a matter that would otherwise be considered to invade privacy creates an absolute privilege, provided that the action does not exceed the scope of the consent. Restatement (Second) of Torts § 652(F). Where testimony indicates that facts are not disputed, the Court may grant summary judgment for failure to state a claim.

■ Even assuming that the monitors intruded upon the firefighters' solitude, the Court has determined that the collection procedures used by SODAT were reasonable under constitutional principles. Moreover, the "intrusion into physical solitude" claimed by Plaintiffs resulting from the direct observation method was consented to by written contract. The Court finds that no genuine factual dispute exists, and, therefore, the legal issue of whether SODAT's collection method is actionable under a state common law theory was properly directed to and decided by the Court.

### C. Collective Bargaining Agreement

Although Plaintiffs now argue that they did not claim that the direct observation collection method violated the collective bargaining agreement between the parties, they presented extensive evidence to that effect at trial. (See Warrington, Tr. at A–37; Wilmore, Tr. A–242–248; Armstead Tr. at B–4, B–7, B–28–32; B–38–41, 52–54.)

At trial, the Plaintiffs took the position that the collective bargaining agreement concerning drug testing had been violated because of the direct observation collection method utilized by SODAT. For example, Mr. Warrington, the President of Plaintiff Wilmington Firefighters Union Local 1590, testified that even though the parties had not reached a written agreement concerning the collection method, the City was not authorized to observe firefighters urinate as part of the drug testing process. (Warrington, Tr. at A–42, –46, –49; *see also* McNulty A–101–102, A–107 (unwritten side agreement existed)).

As is obvious from the extensive evidence presented, the breach of the collective bargaining agreement was an issue, and the Court construed it as such.

### D. Qualified and Absolute Immunity

 Plaintiffs challenge the Court's decision that the individual defendants are immune from suit due to qualified immunity, and that SODAT cannot be liable as a state actor. To overcome the assertion of a defense of qualified immunity, the Plaintiffs must establish that the individual Defendants knew, or should have known, that the direct observation procedures used by SODAT violated clearly established statutory or constitutional law. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). For liability under 42 U.S.C. § 1983, the Plaintiffs must establish that the objectionable acts were performed by a state actor. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 936–39, 102 S.Ct. 2744, 2753–55, 73 L.Ed.2d 482 (1982).

At the close of Plaintiffs' case, the Court found that the evidence adduced by Plaintiffs did not meet Plaintiffs' burden, and that the individual Defendants were entitled to qualified immunity. (Tr. at B–184). Moreover, the Court concluded that SODAT was a non-state actor, and therefore was immune from suit under 42 U.S.C. § 1983. (Tr. at B–189.) Plaintiffs have presented no new evidence or controlling case law to meet the standard for reargument or a new trial, and therefore, the Court concludes that the Plaintiffs' present Motion must be denied.

## IV. CONCLUSION

For the reasons discussed, Plaintiffs' Motion for Reargument or a New Trial will be denied.

An appropriate Order will be entered.