Beverly **WILCHER**, Sharon Smith, Michael Danylo, Cornelius Skinner, Wilmington Fire–Fighters Assoc. Local 1590, Plaintiffs,

v.

**CITY OF WILMINGTON**, James A. Sills, James T. Wilmore, Sr., Clifton E. Armstead, S.A. Wayne Crosse, William J. Yanonis, Defendants.

City of Wilmington, Third Party Plaintiff,

v.

Sodat–Delaware, Inc., Third Party Defendant.

No. Civ.A. 94–137–JJF.

United States District Court, D. Delaware.

July 27, 1999.

**300**

Teresa Cheek Fariss, Drewry Nash Fennell, Jan R. Jurden, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for plaintiffs.

Carol J. Dulin, Lynn Sheridan Seth, City of Wilmington Law Dept., John W. Morgan, City Solicitor's Office, Wilmington, DE, for Defendants.

Bruce C. Herron, Sawyer, Akin & Herron, P.A., Wilmington, DE, for Third Party defendant Sodat–Delaware, Inc.

### OPINION

FARNAN, Chief Judge.

Presently before the Court are two motions for summary judgment, one filed by the City of Wilmington, James A. Sills, James T. Wilmore, Sr., Clifton E. Armstead, S.A. Wayne Crosse, and William J. Yanonis (collectively "the Defendants") (D.I.166) and one filed by SODAT–Delaware, Inc.("SODAT"), a third-party defendant (D.I.167). By their motions, the Defendants and SODAT seek summary judgment on the Plaintiffs' claim that the urine collection procedure for drug testing utilized by the Defendants and performed by SODAT constitutes an invasion of privacy under Delaware tort law. For the reasons set forth below, the Motions will be granted.

### BACKGROUND

#### I. Procedural Background

This action is a class action filed on behalf of all firefighters employed by the City of Wilmington who were subjected to a random drug testing program between January and March of 1994. The individual named Plaintiffs are all firefighters employed by the City of Wilmington and members of the Wilmington Firefighters Union, Local 1590, which is also a named Plaintiff. The Defendants are the City of Wilmington (the "City"); James H. Sills, Jr., the Mayor of the City; S.A. Wayne Crosse, City Personnel Director; William J. Yanonis, Deputy Personnel Director; James T. Wilmore, Sr., Chief of the Fire Department; and Clifton E. Armstead, Deputy Fire Chief.[1] As a third-party Plaintiff, the City also sued SODAT–Delaware, Inc., a private nonprofit corporation that performed the employment and random urine drug screens.

In their Complaint, the Plaintiffs alleged that the Defendants' method of drug testing, which involved the presence of a supervisor in the same room while the firefighters produced a urine sample, violated the Plaintiffs' rights under the Fourth Amendment and constituted an invasion of privacy under state law. A jury was impaneled, but dismissed by the Court after two days of trial, without objection by the parties. Thereafter, the case proceeded as a bench trial.

Following post-trial submissions by the parties, the Court issued an opinion in favor of the Defendants on both the constitutional and state law claims. *Wilcher v. City of Wilmington,* 891 F.Supp. 993 (D.Del.1995) (*"Wilcher I"*). Thereafter, the Plaintiffs filed a motion for reargument and a new trial. The Court denied the Plaintiffs' Motion, and the Plaintiffs appealed. *Wilcher v. City of Wilmington,* 924 F.Supp. 613 (D.Del.1996) (*"Wilcher II"*).

On appeal, the Court of Appeals for the Third Circuit affirmed the Court's conclusion that the method utilized by the Defendants for testing firefighters for drug use did not violate the firefighters rights under the Fourth Amendment, but vacated the Court's determination that the collection

1. Defendants Sills and Crosse were sued in their individual capacities, while Defendants Wilmore, Armstead and Yanonis were sued in their individual and official capacities.

method did not constitute an invasion of privacy under Delaware law. *Wilcher v. City of Wilmington,* 139 F.3d 366 (3d Cir. 1998) (*"Wilcher III"*). Specifically, the Third Circuit concluded that the Court erred in equating the "reasonableness" standard under the Fourth Amendment with the "reasonable person" standard under state law. *Wilcher III,* 139 F.3d at 379–380. Accordingly, the Third Circuit remanded the case to the Court for reconsideration of the Plaintiffs' invasion of privacy claim. *Id.* at 380.

## II. Factual Background

At oral argument before the Court of Appeals, Plaintiffs' counsel conceded that the Plaintiffs were not seeking reversal of the factual findings rendered by the Court in its post-trial Memorandum Opinion, and in reaching its decision, the Third Circuit accepted as accurate the Court's findings of facts concerning the nature of the urine collection process employed by SODAT. *Wilcher III,* 139 F.3d at 375 and n. 4. Likewise, in their Answering Brief to the Defendants' summary judgment motion, the Plaintiffs do not dispute the Court's previous factual determinations.[2] (D.I. 169 at 3). Accordingly, the Court hereby incorporates by reference the factual determinations set forth in its previous opinion. *Wilcher I,* 891 F.Supp. 993, 995–999 (D.Del.1995).

## DISCUSSION

## I. SODAT's Motion For Summary Judgment

By its Motion For Summary Judgment, SODAT contends that its drug testing pro-

cedures were not highly offensive to a reasonable person. In support of its position, SODAT relies extensively on the Third Circuit's affirmance of this Court's conclusion that SODAT's direct observation method was constitutionally reasonable under the Fourth Amendment.

In opposition to SODAT's Motion, the Plaintiffs contend that a reasonable person would find SODAT's method of drug testing offensive. Specifically, the Plaintiffs contend that the presence of a monitor during urination is highly offensive, and that SODAT had no rational basis for believing that the presence of a monitor was necessary to prevent tampering with the sample.

### A. *Invasion of Privacy Law Generally*

■ Under Delaware common law, the tort of invasion of privacy encompasses four types of wrongs: (1) an intrusion into a plaintiff's physical solitude; (2) publication of private matters violating ordinary decencies; (3) placing a plaintiff in a false light; (4) appropriating a plaintiff's personality for commercial use. *Barbieri v. News–Journal Company,* 189 A.2d 773, 774 (Del.1963). In this case, the Plaintiffs' invasion of privacy claim is based on an intrusion into the plaintiffs' physical solitude.

■ In defining the contours of this tort, the Delaware Supreme Court has adopted Section 652(B) of the Restatement (Second) of Torts. *See Barker v. Huang,* 610 A.2d 1341, 1350 (Del.1992). Section 652(B) states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or

2. In their Statement of Facts, the Plaintiffs acquiesce in the Court's previous factual determinations, but add part of a statement made by the Court in its decision denying the Plaintiffs' motion for reargument and a new trial, i.e. that "these cases [of Wilcher, Smith, Skinner and Danylo] may have involved some observation of the genitalia area generally." (D.I. 169 at 3). Taken in its entirety, the Court stated, "Although these cases may have involved some observation of the genitalia

area generally, this observation was only a by-product of the general observation of the donor." *Wilcher II,* 924 F.Supp. at 618. The Court does not find this statement to be inconsistent with the factual determinations rendered by the Court in *Wilcher I.* Nevertheless, the Court will consider the addition of this statement, in its entirety, as part of the Court's factual findings for purposes of the instant Motions.

seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652(B).

In remanding this case, the Third Circuit held that the Court erred in its application of the Restatement's requirement that the intrusion be "highly offensive to a reasonable person." According to the Third Circuit, the Court "incorrectly concluded, as a matter of law, that a reasonable Delawarean could not find the drug testing procedures 'highly offensive,' simply because the test might have passed muster under the Fourth Amendment." *Wilcher III*, 139 F.3d at 380. Thus, the Third Circuit remanded the case so that the Court could determine "whether the 'reasonable person' standard under Delaware common law would find the practices employed by SODAT 'highly offensive.'" *Id.*

As the Third Circuit correctly noted, the Delaware cases involving invasion of privacy claims do not elaborate on the "highly offensive" standard. Where, as here, the state courts have not ruled on an issue, the federal district court must predict how the state courts would decide the issue. *See Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 765 (3d Cir.1994).

B. *Defining "Highly Offensive To A Reasonable Person" Under Restatement (Second) of Torts § 652(B)*

 Delaware courts have repeatedly recognized that the right of privacy is not an absolute right, but a right that is qualified by the circumstances and the rights of others. *Guthridge v. Pen–Mod, Inc.*, 239 A.2d 709 (Del.Super.1967); *see also Slibeck v. Union Oil Company of California*, 1986 WL 11542, *1 (Del.Super.1986). In this regard, Delaware courts are not unlike other courts that have adopted the Restatement (Second) of Torts for invasion of privacy claims. Accordingly, the Court will look to the case law of those jurisdictions that share Delaware's view of privacy rights and that have also adopted the Restatement's definition of invasion of privacy claims to gain insight into the manner in which the "highly offensive" standard should be applied.

Among the courts recognizing a qualified right to privacy and adopting the Restatement (Second) of Torts on invasion of privacy is the California Supreme Court. In *Hill v. National Collegiate Athletic Association*, the California Supreme Court recognized that "the common law right of privacy is neither absolute nor globally vague, but is carefully confined to specific sets of interests that must be inevitably weighed in the balance against competing interests before the right is judicially recognized." 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633, 648 (1994). Consistent with this balancing approach, the *Hill* court enumerated several factors which should be considered in determining the "offensiveness" of an invasion of privacy interest. These factors include: (1) the degree of the intrusion, (2) the context, conduct, and circumstances surrounding the intrusion, (3) the intruder's motives and objectives; (4) the setting into which the intruder invades; and (5) the expectations of those whose privacy is invaded. *Id.*

Like the California courts, the Pennsylvania courts adhere to the Restatement's formulation of invasion of privacy claims based on an intrusion into seclusion. *See Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974). Interpreting Pennsylvania law on intrusion into seclusion in the context of an employee's alleged wrongful discharge as a result of her refusal to submit to urinalysis screening pursuant to her employer's drug and alcohol policy, the Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would apply a balancing test to determine whether the employer's urinalysis program violated the employee's right to privacy. *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 625 (3d Cir.1992). In so predicting the Third Circuit stated that

"determining whether an alleged invasion of privacy is substantial and highly offensive to the reasonable person *necessitates the use of a balancing test.*" *Id.* (emphasis added).

Consistent with this "balancing approach" to privacy claims, the District Court for the Eastern District of Pennsylvania has interpreted the highly offensive standard to embrace a consideration of all the circumstances surrounding the alleged invasion of privacy. *Wolfson v. Lewis,* 924 F.Supp. 1413, 1421 (E.D.Pa.1996). Specifically, the court expressly adopted the factors set forth in *Hill* for determining whether an invasion of a privacy interest would be "offensive" to an ordinary, reasonable person. *Id.*

Like the District Court for the Eastern District of Pennsylvania, the District Court for the District of Arizona has contemplated the level of offensiveness required by the "highly offensive" standard under Section 652(B). *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.,* 30 F.Supp.2d 1182, 1189 (D.Ariz.1998). Interpreting Arizona state law, the court noted that "Arizona courts recognize the right to privacy should be balanced with other considerations under Arizona law." *Id.* at n. 7. Finding that "Arizona cases offer[ed] little guidance regarding the type of conduct that would constitute a 'highly offensive' intrusion," the court examined other cases addressing the "highly offensive" standard under the Restatement, including *Hill* and *Wolfson. Id.* at 1189–90. Concluding that a balancing test best reflected Arizona's balancing approach to invasion of privacy claims, the court adopted the *Hill* factors as a guideline for determining whether an intrusion would be highly offensive to a reasonable person. *Id.*

Given the Delaware courts' reliance on the Restatement and their position that privacy rights must be balanced with the circumstances and rights of others, the Court predicts that the Delaware courts would embrace a test for the highly offen-sive standard that weighs and balances a multiplicity of factors. Thus, the Court predicts that the Delaware courts, like the courts discussed previously that share Delaware's adoption of the Restatement and its view of privacy claims, would consider the *Hill* factors, including (1) the degree of the intrusion, (2) the context, conduct, and circumstances surrounding the intrusion, (3) the intruder's motives and objectives; (4) the setting into which the intruder invades; and (5) the expectations of those whose privacy is invaded. Accordingly, for purposes of its application of the "highly offensive" standard to the drug testing method employed by SODAT, the Court will adopt the *Hill* factors.

C. *Application of the Highly Offensive Standard to the Plaintiffs' Invasion of Privacy Claim*

 Having predicted the standard by which the Delaware courts would examine the highly offensive element of the Plaintiffs' invasion of privacy claim, the Court must apply this standard to the facts of this case. As stated previously, the parties have raised no challenge to the facts, as set forth by the Court in *Wilcher I,* 891 F.Supp. at 995–999 and *Wilcher II,* 924 F.Supp. at 615, and accepted by the Third Circuit in *Wilcher III,* 139 F.3d at 375. While a determination of whether a particular intrusion is "highly offensive to a reasonable person" is often left to the consideration of a jury, the Plaintiffs do not seek a jury trial. (D.I. 169 at 16). Accordingly, the Court will apply the legal standard outlined above to the facts, as previously adjudicated by the Court.

In this case, the context of the alleged intrusion into the Plaintiffs' physical solitude is the urine collection procedure employed by SODAT for its random drug testing of City firefighters. The circumstances and conduct involved in the collection process included the presence of a monitor who generally supervised the donor during the urine collection process. *Wilcher I,* 891 F.Supp. at 998. The direct

supervision procedure did not in principal or in fact involve the direct observation of the genital area of the person providing the urine, and any general observation of the genitalia was only a by-product of the monitor's general observation of the donor. *Id.; Wilcher II,* 924 F.Supp. at 618.

As for the motives and objectives of the monitor and the direct supervision procedure, the monitor and the direct supervision procedure are intended to insure the integrity of the sample being provided by "deter[ing] would-be cheaters from substituting or adulterating his [or her] own urine sample." *Wilcher III,* 139 F.3d at 378; *Wilcher I,* 891 F.Supp. at 998, 1001. Regarding SODAT's motives, the Plaintiffs claim that SODAT had "no rational basis ... to believe that the presence of a monitor was necessary to prevent tampering with the sample." (D.I. 170 at 5). However, both this Court and the Third Circuit rejected the Plaintiff's claim in considering the interests served by the direct observation method of drug testing. As the Third Circuit stated:

> Like the district court, we find the defendants' expert testimony persuasive. Cheating is a significant concern ... the incidences of cheating described by Dr. Closson are [not] impossible or even implausible ... the City of Wilmington need not wait for a cheating problem to develop in order to justify its use of direct observation.

*Wilcher III,* 139 F.3d at 377–378.

With regard to the setting in which this alleged invasion of privacy occurs, both this Court and the Third Circuit have recognized that excretory functions are personal and private matters. *Borse,* 963 F.2d at 621; *Wilcher I,* 891 F.Supp. at 1001. As the United States Supreme Court has observed:

> There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observations; indeed, its

performance in public is generally prohibited by law as well as social custom. *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (citations omitted). Thus, it is beyond argument that individuals in this setting are generally afforded maximum privacy.

Despite the private setting involved in this case, both this Court and the Third Circuit have also recognized that, as firefighters, the Plaintiffs are unique. Like police, firefighters work in a heavily regulated industry that is intertwined with the important social function of protecting and promoting public safety. *Wilcher I,* 891 F.Supp. at 1001; *Wilcher III,* 139 F.3d at 374–375. As such, a firefighter with an undetected drug problem poses a great safety risk, not only to himself, but to his colleagues and the community at large. *Wilcher III,* 139 F.3d at 374. Thus, it is well-established that, unlike ordinary individuals, firefighters have a diminished expectation of privacy, even in settings generally regarded as private. *Id.*

Examining and weighing the totality of the circumstances described above, the Court concludes that SODAT's drug testing method would not be highly offensive to a reasonable person. A reasonable person would recognize the importance of drug testing, particularly among firefighters who confront dangerous circumstances to save the lives and property of others. A reasonable person would also recognize that the SODAT monitor was only present to insure the accuracy of the drug test, a motive which is both legitimate and important. This is particularly evident where, as here, the SODAT monitors stood in the back of or to the side of the firefighters being tested, only looked in the firefighters general direction and not at their genitalia directly, and offered alternative measures, such as nurse monitors, to individuals who were uncomfortable.

Indeed, as the Third Circuit observed, "In a world where men frequently urinate

at exposed urinals in public restrooms, it is difficult to characterize SODAT's procedure as a significant intrusion on the male firefighters' privacy."[3] *Id.* at 376. Thus, given that men encounter exposed urination on a frequent, if not daily basis, the Court concludes that SODAT's procedures would not be highly offensive to a reasonable person.

With regard to female firefighters, the Third Circuit further observed that "the facts of this case suggest that SODAT took substantial measures to minimize the intrusion of privacy to female firefighters" and that "SODAT has carried out its testing procedure in an appropriate and professional manner." *Id.* at 376–377. While, as the Third Circuit noted, females do not confront exposed urination on a daily basis, the Court concludes that given SODAT's legitimate purpose and the professional manner in which it carried out its procedures, a reasonable person would not be offended by SODAT's testing procedures.

In sum, the Court finds that, based on the facts and circumstances in this case, SODAT's direct observation procedure would not be highly offensive to a reasonable person. Accordingly, SODAT's motion for summary judgment will be granted.

## II. The Defendants' Motion For Summary Judgment

Having concluded that SODAT's testing procedures do not constitute an invasion of privacy, the Defendants are likewise entitled to summary judgment on the Plaintiffs' invasion of privacy claim. However, by their Motion, the Defendants also raise the argument that they are immune from suit under 10 Del.C. § 4010. Because the

3. While the Court recognizes that the Third Circuit's observations regarding the nature of the intrusion were made in the context of discussing the Plaintiffs' Fourth Amendment claim, the Third Circuit noted that the reasonableness of a procedure under the Fourth Amendment may be relevant to the state law invasion of privacy inquiry. *Wilcher III,* 139

immunity argument is unique to the remaining Defendants as governmental entities and/or employees, the Court will consider the Defendants' claim of immunity as an alternate holding.

### A. *Whether the City of Wilmington is Entitled to Immunity*

In their Answer Brief to the Defendants' Motion, the Plaintiffs concede that the City of Wilmington is immune from their invasion of privacy claim under 10 Del.C. § 4010 et seq. (D.I. 169 at 4). Accordingly, the City of Wilmington will be dismissed on the ground that it is immune from suit under 10 Del.C. § 4010, and the Court will proceed to consider whether the remaining Individual Defendants are also entitled to immunity.

### B. *Whether the Individual Defendants are Entitled to Immunity*

■ The scope of immunity for governmental entities and employees is governed by the County and Municipal Tort Claims Act, 10 Del.C. § 4010, et seq. (the "Act"). In pertinent part, the Act provides: "Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 Del.C. § 4011(a). However, pursuant to 10 Del.C. § 4011(c):

An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

F.3d at 380, n. 11. Indeed, given the facts and circumstances test which this Court believes the Delaware courts would utilize in determining whether the intrusion is highly offensive, the Court finds the Third Circuit's observations regarding SODAT's procedures relevant to its state law inquiry.

10 Del.C. § 4011(c). This exception to the statutory grant of immunity to governmental employees narrowly defines both the types of injuries and the types of actions for which immunity is waived. *Carr v. Town of Dewey,* 730 F.Supp. 591, 601 (D.Del.1990). Thus, in order to avoid defeating the broad grant of immunity set forth in Section 4011(a), the exception set forth in Section 4011(c) is to be narrowly construed. *Dale v. Town of Elsmere,* 702 A.2d 1219, 1222 (Del.1997).

In their Answering Brief to the Defendants' Motion, the Plaintiffs concede that the individual Defendants were acting within the scope of their employment during the relevant time periods. (D.I. 169 at 5). Further, the Plaintiffs do not allege that they suffered either property damage or death as a result of the individual Defendants alleged conduct. Accordingly, the parties dispute concerning the application of Section 4011(c) involves two primary issues: (1) whether the Plaintiffs sustained bodily injury, and if so, (2) whether the Defendants acted with wanton negligence or willful and malicious intent.

In arguing that the individual Defendants are immune from suit, the Defendants contend that the Plaintiffs have not suffered "bodily injury" as that term is used in Section 4011(c). In opposition to the Defendants' argument, the Plaintiffs contend that claims for invasion of privacy amount to "bodily injury," and therefore are within the scope of the Act. In reply, the Defendants contend that a definition of "bodily injury" which encompasses the non-physical injuries about which the Plaintiffs complain would be so overbroad as to render meaningless the limitation "bodily."

The term "bodily injury," as used in Section 4011(c), is not defined in the Act. Accordingly, the Court must look to Delaware case law in order to determine how the Delaware Supreme Court would define this term. Although the Delaware Supreme Court has not addressed this issue

specifically, a number of Delaware Superior Court cases are instructive.

For example, in *Gunzl v. Spayd,* the plaintiffs brought an invasion of privacy claim against an employee of a Delaware governmental entity, alleging that the employee conspired with others to monitor and spy on the plaintiffs and report their activities to the New Castle County Complaints section regarding vehicles maintained on the plaintiffs' property and construction performed on the plaintiffs' home. *Gunzl,* C.A. No. 93C–090089, 1995 WL 160352 (Del.Super. Mar.28, 1995) (Babiarz, J.). The plaintiffs alleged that the defendant employee's conduct humiliated and harassed them, resulted wrongful and malicious prosecutions against them, and caused them to suffer mental anguish. Concluding that the plaintiffs injuries did not amount to "property damage, bodily injury or death," within the meaning of Section 4011(c), the court declined to strip the employee of immunity under Section 4011(a).

Similarly, in *Ringer v. Smith,* the plaintiff brought an invasion of privacy action against the State of Delaware and numerous state employees based upon the rejection of several employment applications the plaintiff had filed with various state agencies. *Ringer v. Smith,* C.A. No. 93C–05–015, 1994 WL 750319 (Del.Super. Nov. 23, 1994) (Ridgley, P.J.). In granting the defendants' motion for summary judgment, the court held that such state law causes of action as negligence and invasion of privacy are barred against the State and its employees by the doctrine of sovereign immunity set forth in 10 Del.C. § 4011. *Id.* at *3, n. 6; *see also Barber v. City of Lewes,* et al., C.A. No. 95C–08–006, 1997 WL 127951 (Graves, J.) (Del.Super. Jan. 31, 1997) (granting summary judgment with respect to claims for invasion of privacy, interference with contract and prima facie tort because they are barred by 10 Del.C. § 4011).

Although the Plaintiffs do not challenge the accuracy and/or applicability of the

previously discussed cases, the Plaintiffs direct the Court to two other Delaware Superior Court cases, which the Plaintiffs contend stand for the proposition that Delaware state courts have treated claims for invasion of privacy as "bodily injury" within the scope of the Act. Specifically, the Plaintiffs refer to *Washington v. Wilmington Police Department*, C.A. No. 92C–05–159, 1995 WL 654158 (Del.Super. Sept.18, 1995) (Bifferato, J.) and *Thomas v. Wilmington City Police Department*, C.A. No. 92C–03–224, 1994 WL 315232 (Del.Super. June 3, 1994) (Del Pesco, J.).

Although the Plaintiffs are correct that *Washington* is an example of a case in which an invasion of privacy claim survived a motion for summary judgment filed by a municipal employee, the Court finds *Washington* distinguishable from the instant case. In *Washington*, the plaintiff filed suit against the Wilmington Police Department, the City of Wilmington, and a police officer alleging that the officer used excessive force against the plaintiff during a police stop. The plaintiff's complaint was not set out in counts, but the court concluded that her complaint could be fairly construed as setting forth a panoply of intentional torts, including battery assault, intentional infliction of emotional distress, false arrest, false imprisonment and invasion of privacy. Accepting as true the plaintiff's version of the facts, i.e. that the defendant police officer forcibly pushed a visibly handicapped woman against a wall and restrained her, the court concluded that a genuine issue of material fact existed as to whether the defendant's conduct was wilful or wanton in nature. In reaching this conclusion, the court neither discussed, nor even referred to the bodily injury requirement of Section 4011(c), presumably because it was apparent to the court that a handicapped woman could have suffered bodily injury by being forcibly pushed against a wall.

Unlike the plaintiff in *Washington*, the Plaintiffs in this case have not alleged any facts which suggest that the individual Defendants caused them bodily injury. The Plaintiffs testified that they felt embarrassed and humiliated by the monitored drug testing procedures, but did not testify to any physical injuries that they sustained as a result of the procedures. In this regard, the Court finds the Plaintiffs' injuries to be more akin to the injuries suffered by the plaintiffs in *Gunzl*, than to the injuries suffered by the plaintiff in *Washington*. Accordingly, the Court concludes that *Washington* is factually inapposite from the instant case.

With regard to the *Thomas* case, the Plaintiffs correctly state that the case involved the mistaken handcuffing, transporting and searching of an innocent suspect; however, the Plaintiffs misconstrue the holding of *Thomas*. (D.I. 169 at 5). The Plaintiffs state, "It is evident, on at least two occasions [*Washington* and *Thomas*], the Delaware state courts believed that invasion of privacy was an act causing bodily injury so as to bring it within the scope of the Act." (D.I. 169 at 5). The Court disagrees with the Plaintiffs' characterization of *Thomas*. The *Thomas* case is more analogous to the *Gunzl* and *Baber* cases, because the court granted summary judgment in favor of the defendants under Section 4011(c) with respect to the plaintiff's invasion of privacy claim. Moreover, the holding of *Thomas* did not rest on the issue of bodily injury, but rather on the court's analysis of whether the defendant officers acted with wanton negligence or wilful and malicious intent. Concluding as a matter of law that the officers did not act with wanton negligence of malicious intent, the court held that the officers could not be personally liable for their actions under Section 4011(c). *Id.* at 11. Accordingly, the Court finds that *Thomas* contradicts, rather than supports the Plaintiffs' position.

In sum, the weight of the case law in Delaware suggests that invasion of privacy claims which do not raise the specter of actual physical injury are not treated as claims of bodily injury in Delaware, and as

such, do not fall within the Section 4011(c) exception to immunity. *Gunzl,* C.A. No. 93C–090089, 1995 WL 160352; *see also Barber,* C.A. No. 95C–08–006, 1997 WL 127951; *Ringer,* C.A. No. 93C–05–015, 1994 WL 750319. The Plaintiffs have not alleged any facts which suggest that they suffered bodily injury as a result of the individual Defendants' decision to utilize the direct observation method of drug testing, and therefore, the Court concludes that Section 4011(c) is inapplicable to strip the individual Defendants of their immunity. Because the Plaintiffs cannot establish "bodily injury" under the Act, the Court need not consider whether the Defendants acted with wanton negligence or malicious intent. Accordingly, the Court will grant summary judgment in favor of the individual Defendants on the ground that they are immune from suit under 10 Del.C. § 4011(a).[4]

### CONCLUSION

For the reasons discussed, the Motion For Summary Judgment (D.I.166) filed by the Defendants and the Motion For Summary Judgment Of Defendant SODAT–Delaware, Inc. As To Plaintiff's State Law Claim For Invasion Of Privacy (D.I.167) will be granted.

An appropriate Order will be entered.

---

4. Having concluded that the individual Defendants are immune from suit, and in light of the Court's holding that the collection procedures utilized by the Defendants and performed by SODAT would not be highly offensive to a reasonable person, the Court declines to consider the remaining arguments raised by the individual Defendants in their Motion.